1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| | |
|---|---|
| MONICA FORSYTHE, | ) 1:10-cv-01515 AWI GSA |
|        Plaintiff, | ) |
| | ) **FINDINGS AND RECOMMENDATIONS** |
| v. | ) **REGARDING PLAINTIFF'S SOCIAL** |
| | ) **SECURITY COMPLAINT** |
| MICHAEL ASTRUE, Commissioner of | ) |
| Social Security, | ) |
|        Defendant. | ) |
| _____ | ) |

17
18

### BACKGROUND

19       Plaintiff Monica Forsythe ("Plaintiff") seeks judicial review of a final decision of the

20 Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21 supplemental security income benefits pursuant to Title XVI of the Social Security Act.  The

22 matter is currently before the Court on the parties' briefs, which were submitted, without oral

23 argument, to Magistrate Judge Gary S. Austin, for findings and recommendations to the District

24 Court.

25 //

26 //

27
28

1

## FACTS AND PRIOR PROCEEDINGS[1]

2     Plaintiff filed an application for benefits on February 28, 2008, alleging disability as of

3    that same date.  AR 88-91.  Plaintiff's application was denied initially and on reconsideration,

4    and she requested a hearing before an Administrative Law Judge ("ALJ").  AR 41-52.  ALJ

5    Laura Speck Havens held a hearing and subsequently issued an order denying benefits on

6    February 24, 2010, finding Plaintiff was not disabled.  AR 10-19.  On June 19, 2010, the Appeals

7    Council denied review.  AR 1-3.

8

### Hearing Testimony

9    ALJ Havens held a hearing on November 18, 2009, in Stockton, California.  Plaintiff

10    appeared and testified; she was assisted by attorney Gina Fazio.  Vocational Expert ("VE") David

11    Dittmer also testified.  AR 20-35.

12    At the time of the hearing, Plaintiff was thirty-five-years old and living in Ceres,

13    California, with her boyfriend.  AR 24-25.

14    Plaintiff received a high school diploma, but cannot read the newspaper.  AR 24.  She can

15    read street signs and perform simple math: adding and subtracting.  AR 24.  Plaintiff does have a

16    driver's license, but it was suspended for nonpayment of child support.  AR 27.  She has used

17    public transportation, but finds it difficult because she has to ask directions.  AR 27.  For

18    example, she learned to take the bus to counseling because her friends showed her how to do so.

19    AR 29-30.

20    With regard to previous employment, Plaintiff worked as an in home support services

21    ("IHSS") worker; it is the only position or type of job she has ever held.  AR 31.  Plaintiff had to

22    ask questions and had to be reminded to give the client her medications as Plaintiff herself would

23    forget.  She frequently had to consult the list provided by IHSS or contact a case worker.  AR 31.

24

25

26

27    [1]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

28           2

She could read the list provided by IHSS but the client would have to explain it to her, or her boyfriend would come over and assist her.  AR 31-32.

In a typical day, Plaintiff gets up about seven o'clock.  She is able to dress and bathe herself and perform chores around the apartment, such as cooking, dishwashing, sweeping, mopping, and laundry.  AR 25.  She watches about six hours of television a day and exercises for about thirty minutes a day.  AR 26.  While she does visit family outside the home, Plaintiff does not attend church nor does she have any hobbies.  AR 26-27.

Plaintiff sees a psychiatrist at Telecare and has been prescribed Depakote,[2] Abilify[3] and Buspar.[4]  She has experienced a side effect from the Depakote: weight gain.  AR 28.  She sees her psychiatrist about every three months and attends counseling every two weeks or so.  AR 28-29.  The counselor also visits Plaintiff in her home.  AR 29.  When she was asked how her depression and learning disability prevent her from working, Plaintiff replied, "[because] I can't comprehend what I do.  And I have a hard time comprehending things.  So I have to ask and repeat and going to repeat thoroughly again."  AR 29.

When asked whether she had any problems sleeping, Plaintiff indicated that she sleeps about five hours a night because she awakes in the middle of the night due to a "chronic back problem."  AR 27-28.  Plaintiff attributes her back problems to sciatic nerve damage in her lower back as a result of "being abused."  AR 30.  Exercise helps a little.  AR 30.  She can sit for "not even an hour" and can walk for about an hour or two before needing rest.  AR 30.

---

[2]Depakote is a "Valproate product [] FDA-approved drug[ used] to treat seizures, and manic or mixed episodes associated with bipolar disorder (manic-depressive disorder), and to prevent migraine headaches." Http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000677/.

[3]Abilify or Aripiprazole "is used to treat the symptoms of schizophrenia . . . .  It is also used alone or with other medications to treat episodes of mania or mixed episodes . . . in adults . . . with bipolar disorder . . . . Aripiprazole is also used with an antidepressant to treat depression when symptoms cannot be controlled by the antidepressant alone."  Http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000221/.

[4]Buspar or Buspirone "is used to treat anxiety disorders or in the short-term treatment of symptoms of anxiety."  Http://:www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000876/.

Plaintiff did have a problem with drugs previously, methamphetamine being her drug of choice.  However, she last used in 2005 and had been clean and sober for almost four years at the time of the hearing.  AR 26.

VE Dittmer was asked to assume a hypothetical worker of Plaintiff's age, education and experience, with no exertional limitations, but with the following restrictions:

> A fair ability to relate to coworkers, a fair ability to deal with the public, a fair ability to function independently, a fair ability to maintain attention and concentration, a fair ability to understand, remember, and carry out complex and detailed job instructions, a good ability to understand, remember, and carry out simple job instructions, a poor ability to use judgment, a poor ability to behave in an emotionally stable manner and a poor ability to relate predictably in the workplace. Fair is - - good is defined as more than satisfactory.  Fair is defined as limited, but satisfactory.  And poor is defined as seriously limited, but not precluded.

AR 33.  The VE indicated such an individual could perform the work of a warehouse worker, DOT[5] 922.687-058, medium with an SVP[6] of two, with a three-quarter reduction for the mental limitations identified, resulting in about 25,000 positions in California.  AR 33.  Further, the VE indicated such an individual could also perform the work of: (1) a laundry worker, DOT 361.684-018, medium and SVP of two, with a total of 4,500 positions available in California; and (2) a hand packager, DOT 920.587-018, medium and SVP of two, with 14,000 positions available in California.  AR 33-34.  Only the warehouse worker involved a deviation from the DOT to accommodate the mental limitations identified in the hypothetical question.  AR 34.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 131-308.  The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 10-19.

---

[5]"DOT" refers to the Dictionary of Occupational Titles.

[6]"SVP" refers to specific vocational preparation.

4

1    More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful

2  activity since February 28, 2008, the application date.  AR 12.  Further, the ALJ identified

3  depression, a learning disorder and post traumatic stress disorder as severe impairments.  AR 12-

4  13.  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairment or

5  combination of impairments did not meet or exceed any of the listed impairments.  AR 13-14.

6    Based on her review of the entire record, the ALJ determined that Plaintiff has the

7  residual functional capacity ("RFC") to perform the full range of work at all exertional levels but

8  with the following nonexertional limitations:

9         the claimant has a fair ability to relate to coworkers and deal with the public; a fair
          ability to function independently; a fair ability to maintain attention and
10        concentration; a fair ability to understand, remember, and carry out complex and
          detailed job instructions.  The claimant has a good ability to understand,
11        remember, and carry out simple job instructions.  She has a poor ability to use
          judgment, behave in an emotionally stable manner, and relate predictably in the
12        workplace.

13  AR 14, 15-18.

14    Next, the ALJ determined that Plaintiff had no past relevant work as her previous work

15  experience was very minimal.  AR 18.  Nevertheless, based upon Plaintiff's age, education, work

16  experience and RFC, the ALJ determined there were jobs that existed in significant numbers in

17  the regional economy that Plaintiff could perform.  Specifically, the ALJ found Plaintiff could

18  perform the work of a warehouse worker, laundry worker or hand packager.  AR 18-19.

19  Therefore, the ALJ determined Plaintiff was not disabled.  AR 19.

20                              **SCOPE OF REVIEW**

21    Congress has provided a limited scope of judicial review of the Commissioner's decision

22  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

23  this Court must determine whether the decision of the Commissioner is supported by substantial

24  evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

25  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

26  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

27

28                                      5

1  reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

2  401.  The record as a whole must be considered, weighing both the evidence that supports and

3  the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

4  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

5  apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

6  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

7  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

8  substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

9  Cir. 1987).

10                                       **<u>REVIEW</u>**

11        In order to qualify for benefits, a claimant must establish that he is unable to engage in

12  substantial gainful activity due to a medically determinable physical or mental impairment which

13  has lasted or can be expected to last for a continuous period of not less than twelve months.  42

14  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

15  such severity that he is not only unable to do her previous work, but cannot, considering his age,

16  education, and work experience, engage in any other kind of substantial gainful work which

17  exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

18  The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

19  Cir. 1990).

20        Here, Plaintiff argues that the ALJ failed to (1) consider Listing 12.05C at step three; (2)

21  properly assess her credibility and pain symptoms; (3) include all limitations in her RFC finding;

22  (4) include all limitations in the hypothetical questions posed to the VE; and (5) failed to comply

23  with SSR 00-4p.

24  //

25  //

26  //

27

28                                          6

1
### DISCUSSION[7]

2       Plaintiff asserts the ALJ erred in failing to consider whether she met or equaled Listing

3   12.05C and thus applied an incorrect legal standard.  More particularly, Plaintiff complains that

4   the Verbal IQ score of 66 and Full Scale IQ score of 67 assigned by Roxanne Morse, Ph.D., fall

5   within the listing requirements and require a finding of disability despite the lack of IQ scores

6   obtained before Plaintiff turned twenty-two years of age because there is evidence to support the

7   existence of deficits in adaptive functioning prior to that age.  (Doc. 17 at 10-19.)

8       The ALJ's relevant findings at step three provide as follows:

9           The claimant's mental impairments, considered singly and in combination,
    do not meet or medically equal the criteria of *listings 12.02, 12.04, and 12.06*.  In
10   making this finding, the undersigned has considered whether the "paragraph B"
    criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental
11   impairments must result in at least two of the following: marked restriction of
    activities of daily living; marked difficulties in maintaining social function;
12   marked difficulties in maintaining concentration, persistence, or pace; or repeated
    episodes of decompensation, each of extended duration.  A marked limitation
13   means more than moderate but less than extreme.  Repeated episodes of
    decompensation, each of extended duration, means three episodes within 1 year,
14   or an average of once every 4 months, each lasting for at least two weeks.
           In her activities of daily living, the claimant has mild restrictions.  She is
15   able to dress and bathe herself, prepare meals, perform household chores, and use
    public transportation.  In social functioning, the claimant has moderate
16   difficulties.  The claimant has been diagnosed with a mood disorder, with
    irritability and angry outbursts, which limit her ability to function in this area.  She
17   is, however, able to socialize with her family.  With regard to concentration,
    persistence or pace, the claimant has moderate difficulties.  Again, the claimant's
18   mental impairments, including her mood disorder and also learning disorder, limit
    her ability to function in this domain.  Dr. Voguy broke claimant's abilities down
19   into mild, moderate, and marked.  While the claimant had mild-moderate
    limitations which correlated with the doctor's assessment, discussed more
20   thoroughly below, Dr. Voguy opined that the claimant had marked limitations in
    her ability to withstand the stress and pressure associated with an 8 hour workday
21   and day-to-day work activity.  However, in other areas related to concentration,
    persistence, and pace, such as ability to understand and carry out simple to
22   complex job instructions, Dr. Voguy determined that the claimant had only mild-
    moderate limitations.  As for episodes of decompensation, the claimant has
23   experienced no episodes of decompensation, which have been of extended
    duration. . . .

24

25           [7]The parties are advised that this Court has carefully reviewed and considered all of the briefs, including
26   arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific
    argument or brief is not to be construed that the Court did not consider the argument or brief.

27

28                                               7

1

2

        Because the claimant's mental impairment does not cause at least two
"marked" limitations or one "marked" limitation and "repeated" episodes of
decompensation, each of extended duration, the "paragraph B" criteria are not
satisfied.

3

4    AR 13-14, emphasis added & internal citations omitted.

5        As pointed out by Plaintiff, the ALJ failed to assess Plaintiff's impairment under Listing

6    12.05.  The Commissioner alleges he "was not required to tease out specific evidence disproving

7    each and every different section of the Listings."  (Doc. 18 at 5.)  This alleged oversight is

8    particularly troubling to the Court where, as here, the ALJ identified a "learning disorder" as a

9    severe impairment.[8]  Furthermore, the ALJ summarized the psychological disability evaluation of

10   May 15, 2008, and thus should have been aware that two of the three IQ scores obtained fell

11   within the parameters of Listing 12.05C.

12       The Disability Evaluation Under Social Security (Blue Book September 2008) defines

13   mental retardation as follows:

14

15

        Mental retardation refers to significantly subaverage general intellectual
functioning with deficits in adaptive functioning initially manifested during the
developmental period; i.e., the evidence demonstrates or supports onset of the
impairment before age 22.

16

        The required level of severity for this disorder is met when the
requirements in A, B, C, or D are satisfied.

17

        A.  Mental incapacity evidenced by dependence upon others for personal
needs (e.g., toileting, eating, dressing, or bathing) and inability to follow

18

directions, such that the use of standardized measures of intellectual functioning is
precluded;

19

                OR

        B.  A valid verbal, performance, or full scale IQ of 59 or less;

20

                OR

        C.  *A valid verbal, performance, or full scale IQ of 60 through 70 and a*

21

*physical or other mental impairment imposing an additional and significant*
*work-related limitation of function*;

22

                OR

        D.  A valid verbal, performance, or full scale IQ of 60 through 70,

23

resulting in at least two of the following:
        1.  Marked restriction of activities of daily living; or

24

        2.  Marked difficulties in maintaining social functioning; or
        3.  Marked difficulties in maintaining concentration, persistence, or pace;

25

26

27   [8] During the administrative hearing, the ALJ stated that this matter was "mostly . . . a mental case."  AR 23.

28                                        8

or

4.  Repeated episodes of decompensation, each of extended duration.

Emphasis added. *See* http://www.ssa.gov/disability/professionals/bluebook/12.00.

In the psychological evaluation of May 15, 2008, Dr. Morse, aided by psychological assistant Jacklyn Chandler, administered the Wechsler Adult Intelligence Scale-III (WAIS-3). AR 269.  The scaled scores following the WAIS-3 testing yielded the following IQ scores:  a Verbal Scale IQ score of 66; a Performance Scale IQ score of 76; and a Full Scale IQ score of 67. AR 269.  More specifically, Dr. Morse's findings state:

On the WAIS-III, the claimant produced a Verbal Scale IQ score that fell within the extremely low range.  The Performance Scale IQ score fell within the borderline range.  The Full Scale IQ score fell within the extremely low range. There was a significant difference between the VIQ and PIQ scores in that her Performance IQ score was 10 points higher than her Verbal IQ score, a difference that is considered significant at the .05 level. Clinical observation and the claimant's pattern of performance suggest current verbal intellectual functioning within the extremely low to borderline range, and current visuomotor intellectual functioning within the borderline to low average range, with moderately fluctuating attention and concentration, and mildly decreased pace, which appeared to be due to her psychiatric symptoms.

AR 269.

The Commissioner asserts in part that a diagnosis of mental retardation is a prerequisite to meeting or equaling Listing 12.05 and contends that the evidence does not support a diagnosis of mental retardation.  The Commissioner's assertions, however, were not articulated by ALJ Havens and thus constitute improper, post-hoc rationalizations which cannot be considered.  *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (court cannot rely upon reasoning the ALJ did not express).  Moreover, Title 20 of the Code of Federal Regulations, Part 404, Subpart P, Appendix 1, section 12.05 does not require Plaintiff to show, as a threshold issue, a diagnosis of mental retardation.  Rather, it simply requires the evidence demonstrate or support an onset of "subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before the age of twenty-two.  *Id.*; *see also Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007) ("[W]e have specifically held that a formal diagnosis of mental

1   retardation is not required to fall within the confines of section 12.05"); *Pedro v. Astrue*, ___

2   F.Supp.2d ___, 2011 WL 1100214 (D. Or. Mar. 23, 2011) at *3 (diagnosis of mental retardation

3   not required); *Lewis v. Astrue*, 2008 WL 191415 (N.D. Cal Jan. 22, 2008) at *5 ("a diagnosis of

4   mental retardation is not required to meet Listing 12.05"). Thus, the Commissioner's argument

5   lacks merit.

6        ***First Prong: Validity & Onset Prior to Age 22***

7        There is no question as to the validity of Dr. Morse's findings. The doctor noted that

8   Plaintiff "was genuine, cooperative and displayed adequate effort. She appeared invested in her

9   performance . . . demonstrated moderately fluctuating attention and concentration . . . was fidgety

10  [and] worked with a mildly slowed pace. She demonstrated adequate performance." AR 269.

11  More expressly, Dr. Morse stated: "The test results obtained should be considered a *valid*

12  estimate of the claimant's current level of functioning." AR 269, emphasis added. Notably too,

13  the ALJ's reference to these May 2008 test results does not challenge the validity of the test

14  results. *See* AR 16.

15       The Ninth Circuit has not adopted the rebuttable presumption that some circuits have

16  regarding mental retardation: that a valid adult IQ score is entitled to a presumption that the

17  impairment existed during the claimant's developmental phase, or before twenty-two years of

18  age. However, several other circuit courts have adopted a *per se* rebuttable presumption. *See*

19  *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (IQ tests after age 22 satisfy the

20  listing criteria and "create a rebuttable presumption of a fairly constant IQ throughout life"),

21  citing *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) & *Luckey v. U.S. Dept. Of Health and*

22  *Human Services*, 890 F.2d 666, 668 (4th Cir. 1989). The Third and Sixth Circuits have not

23  adopted a *per se* presumption and require that the record contain some evidence of the deficit

24  prior to the age of twenty-two years. *See Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001); *Markle*

25  *v. Barnhart*, 324 F.3d 182, 189 (3rd Cir. 2003).

26

27

28                                     10

Within the Ninth Circuit, several district courts have favorably cited to the rebuttable presumption. *Jackson v. Astrue*, 2008 WL 5210668 (C.D. Cal. Dec. 11, 2008) at *6 ("several circuits have held that valid IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life . . .. The Court finds the reasoning of the Seventh, Eighth, and Eleventh Circuits to be persuasive"); *Schuler v. Astrue*, 2010 WL 1443882 (C.D. Cal. Apr. 7, 2010) at *6 (citing *Hodges, Muncy* and *Luckey* for the proposition "that a valid qualifying IQ score obtained by the claimant after age 22 creates a rebuttable presumption that the claimant's mental retardation began prior to the age of 22, as it is presumed that IQ scores remain relatively constant during a person's lifetime"); *Walberg v. Astrue*, 2009 WL 1763295 (E.D. Wash. June 18, 2009) at * 8 (citing *Hodges* favorably but examining whether evidence in the record is supportive of early onset impairment).  In the Eastern District of California, the courts have been reluctant to adopt the presumption.  *See Rhein v. Astrue*, 2010 WL 4877796 (E.D. Cal. Nov. 23, 2010) at *8; *Lawson v. Astrue*, 2010 WL 961722 (E.D. Cal. Mar. 16, 2010) at *5; *but see Aminzadeh v. Commissioner of Social Sec.*, 2011 WL 3322798 (E.D. Cal. Aug. 2, 2011) at *7; *Campbell v. Astrue*, 2011 WL 444783 (E.D. Cal. Feb. 8, 2011) at *17.

Nonetheless, this Court *is* persuaded by the reasoning in those cases that support a rebuttable presumption that a valid adult IQ score is evidence of impairment during the claimant's developmental phase.  Here then, Plaintiff would be entitled to a rebuttable presumption that the valid Verbal IQ score of 66 and Full Scale IQ score of 67 obtained when she was about thirty-five years and two months (35.2) of age is evidence of impairment prior to the age of twenty-two.

Notwithstanding, assuming this Court declined to adopt a *per se* presumption, there is evidence in this record to support a finding that the onset preceded the age of twenty-two.  Here, a review of Plaintiff's cumulative education record confirms she attended special education classes, was held back in the first grade, and consistently performed poorly in math and reading during her primary education.  "FAIL" is the entry for the majority of Plaintiff's testing scores in

math and reading. AR 507-514. This Court finds Plaintiff's educational record to be circumstantial evidence of a deficit in adaptive functioning.[9] Courts have found that circumstantial evidence can infer a deficit in adaptive functioning prior to the age of twenty-two. Examples of such evidence include attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history. *See, e.g., Christner v. Astrue*, 498 F.3d at 793; *Pedro v. Astrue*, ___ F.Supp.2d ___, 2011 WL 100214 at *5; *Gomez v. Astrue*, 695 F.Supp.2d 1049 (C.D. Cal. 2010); *Canales v. Astrue*, 2011 WL 4704228 (D. Or. Oct. 4, 2011); *Aminzadeh v. Astrue*, 2011 WL 3322798 at *8 ("while Plaintiff did graduate from high school, the record establishes that she attended special education classes and had difficulty in the areas of reasoning, memory, and attention"); *Campbell v. Astrue*, 2011 WL 444783 *17; *Payne v. Astrue*, 2010 WL 654319 (D. Ariz. Feb. 23, 2010) at *11. Plaintiff herself testified that she cannot read a newspaper, has difficulty using public transportation, has difficulty with comprehension and directions, and can perform only simple math. AR 24, 27, 29-30.

In sum, Plaintiff attended special education classes and had significant difficulty with core subject matter, despite graduating from high school. Moreover, a review of Plaintiff's certified earnings record indicates that between 1998 and 2009 she earned a total of $4,991.91, evidence of her low skilled work history. *See* AR 95. Considering the foregoing together with Plaintiff's Verbal IQ score of 66 and Full Scale IQ score of 67, this Court finds that the onset of Plaintiff's mental retardation occurred prior to the age of twenty-two.

### *Listing 12.05C's Second Prong*

The second prong of Listing 12.05C requires an examination of Plaintiff's impairments and their impact on her ability to work. As previously pointed out, ALJ Havens failed to address

---

[9]Presently, the Court notes this record contains a Disability Report - Field Office wherein it was noted Plaintiff had difficulty "understanding." A further observation reads as follows: "She had a hard time understanding questions that I asked her, I would have to re-word my questions and use examples." AR 97. The Court also notes that the treating records from Stanislaus County Mental Health Department reveal that Plaintiff had to be constantly reminded of the protocol regarding prescription refills. *See* AR 421, 426, 427, 432, 439, 441, 450, 466, 479.

1    Listing 12.05C altogether.  Nevertheless, the ALJ previously found Plaintiff's severe

2    impairments to include *depression*, a learning disorder, and *post traumatic stress disorder*.  AR

3    12, emphasis added.   Thus, a finding of severe impairment at step two is a *per se* finding of

4    "impairment imposing additional and significant work-related limitation of function" as

5    employed in the second prong of Listing 12.05C.  *See Fanning v. Bowen*, 827 F.2d 631, 633 (9th

6    Cir. 1987); *Huber v. Astrue*, 2010 WL 4684021 (D. Ariz., Nov. 12, 2010) at *2; *Rowens v.

7    Astrue*, 2010 WL 3036478 (E.D. Cal., Aug. 2, 2010) at *3; *see also Hinkle v. Apfel*, 132 F.3d

8    1349, 1352 (10th Cir. 1997); *Edwards v. Heckler*, 736 F.2d 625, 629-31 (11th Cir. 1984); *Nieves

9    v. Secretary of Health & Human Servs.*, 775 F.2d 12, 14 & n. 7 (1st Cir. 1985); *see also

10   Aminzadeh v. Astrue*, 2011 WL 3322798 at *8; *Campbell v. Astrue*, 2011 WL 444783 at *18.

11          The fact that a severe impairment imposes significant work-related limitations of function

12   is particularly evident when considering the Social Security Administration's definition of a

13   severe impairment at step two: "You must have a severe impairment. If you do not have any

14   impairment or combination of impairments which significantly limits your physical or mental

15   ability to do basic work activities, we will find that you do not have a severe impairment and are,

16   therefore, not disabled."  20 C.F.R. § 416.920(c).  As the ALJ determined that Plaintiff had

17   additional severe impairments apart from her decreased intellectual functioning, the second

18   prong of Listing 12.05C is established.

19          ***The Commissioner's Reference to Past Drug Use***

20          In his argument opposing Plaintiff's assertion that she meets or equals Listing 12.05C, the

21   Commissioner asserts that Plaintiff's past use of methamphetamine "prohibits an award of

22   benefits where drug use contributes to a claimant's limitations."  (Doc. 18 at 8.)  Plaintiff replies

23   that "the ALJ made no finding that [she] has a substance addiction disorder or that it contributes

24   to her limitations." (Doc. 19 at 15.)

25          The Commissioner cited directly to Title 42 of the United States Code section

26   423(d)(2)(C), which provides as follows:  "An individual shall not be considered to be disabled

27

28                                                      13

1   for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph)

2   be a contributing factor material to the Commissioner's determination that the individual is

3   disabled."  In *Parra v. Astrue*, the Ninth Circuit explained:

4       "A finding of 'disabled' under the five-step inquiry does not automatically
        qualify a claimant for disability benefits." *Bustamante v. Massanari*, 262 F.3d
5       949, 954 (9th Cir.2001). Under 42 U.S.C. § 423(d)(2)(C), a claimant cannot
        receive disability benefits "if alcoholism or drug addiction would ... be a
6       contributing factor material to the Commissioner's determination that the
        individual is disabled." Congress adopted this amendment in 1996 as part of the
7       Contract with America Advancement Act ("CAAA"), Public Law 104-121. As we
        have previously explained, the purpose of the CAAA was "to discourage alcohol
8       and drug abuse, or at least not to encourage it with a permanent government
        subsidy." *Ball v. Massanari*, 254 F.3d 817, 824 (9th Cir.2001). Under the
9       implementing regulations, the ALJ must conduct a drug abuse and alcoholism
        analysis ("DAA Analysis") by determining which of the claimant's disabling
10      limitations would remain if the claimant stopped using drugs or alcohol. 20 C.F.R.
        § 404.1535(b). If the remaining limitations would still be disabling, then the
11      claimant's drug addiction or alcoholism is not a contributing factor material to his
        disability. If the remaining limitations would not be disabling, then the claimant's
12      substance abuse is material and benefits must be denied. *Id.*

13  *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007).

14      Plaintiff's position is correct.  ALJ Havens did not make any findings that Plaintiff's drug

15  use contributed to her limitations.  In fact, there is only a passing reference to Plaintiff's history

16  of drug use in the ALJ's determination.  *See* AR 16.  The record is replete with references to

17  Plaintiff's sobriety and *past* drug use.  In light of the foregoing discussion and this Court's

18  findings regarding Plaintiff's IQ scores and the fact that IQ scores are typically considered

19  consistent throughout a person's lifetime, coupled with the significant circumstantial evidence of

20  Plaintiff's subaverage intellectual functioning prior to the age of twenty-two, the Commissioner's

21  argument is not well taken.

22  //

23  //

24  //

25  //

26  //

27

28                                              14

1    ***Reversal with Award of Benefits is Appropriate***

2        The decision whether to remand a matter pursuant to sentence four of Title 42 of the

3    United States Code section 405(g) or to order immediate repayment of benefits is within the

4    discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  When a

5    court reverses an administrative agency determination, the proper course, except in rare

6    instances, is to remand to the agency for additional investigation or explanation.  *Moisa v.*

7    *Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004), citing *INS v. Ventura*, 537 U.S. 12, 16 (2002).

8    Generally, an award of benefits is directed only where no useful purpose would be served by

9    further administrative proceedings or where the record is fully developed.  *Varney v. Secretary of*

10   *Health and Human Services*, 859 F.2d 1396, 1399 (9th Cir. 1988).

11       In this case, and for reasons given above, this Court finds and will recommend that no

12   useful purpose would be served by further administrative proceedings.  Additionally, this Court

13   finds the record to be fully developed.  Plaintiff has clearly established that she meets or equals

14   the listing for mental retardation and is therefore "presumed disabled, and no further inquiry is

15   necessary."  *Baxter v. Sullivan*, 923 F.2d 1391, 1395 (9th Cir. 1991).

16       Finally, in light of this decision, this Court did not consider Plaintiff's remaining

17   arguments.  *See Byington v. Chater*, 76 F.3d 246, 250-51 (9th Cir. 1996) ("Because we find that

18   the district court committed error and the decision of the ALJ is supported by substantial

19   evidence, we do not consider the [] other arguments on appeal").

20                              **RECOMMENDATION**

21       Based on the foregoing, the Court finds that the ALJ's decision is not supported by

22   substantial evidence in the record as a whole and is not based on proper legal standards.

23   Accordingly, this Court RECOMMENDS that this case be REMANDED to the Commissioner of

24   Social Security for a calculation of benefits only and that judgment be entered for Plaintiff

25   Monica Forsythe and against Defendant Michael J. Astrue.

26

27

28                              15

1    These findings and recommendations will be submitted to the Honorable Anthony W.

2  Ishii pursuant to the provisions of Title 28 of the United States Code section 636(b)(l).  Within

3  fifteen (15) days after being served with these findings and recommendations, the parties may file

4  written objections with the Court.  The document should be captioned "Objections to Magistrate

5  Judge's Findings and Recommendations."  The parties are advised that failure to file

6  objections within the specified time may waive the right to appeal the District Court's order.

7  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

8

9

10    IT IS SO ORDERED.

11  **Dated:    January 24, 2012**              _____/s/ **Gary S. Austin**_____
                                                    UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    16